UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| HOLLIE MERCER, Independent Administrator of the Estate of Aaron Charles Mercer, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 2:03-CV-276 |
| SOUTH BEND SNOWMOBILER'S CLUB, INC. | ) ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

Defendant filed two Motions *in Limine* [DE 67, 89] to exclude specific testimony of Plaintiff's expert Stephan Neese under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  After having considered Defendant's Motions, Mr. Neese's proffered reports, and Mr. Neese's *Daubert* testimony, the Court ruled on the Motions at trial; it granted in part and denied in part Defendant's First Motion in Limine, and granted Defendant's Seventh Motion in Limine.  The Court now reduces those rulings to writing.

**I.  BACKGROUND**

Plaintiff Hollie Mercer brought this lawsuit against the South Bend Snowmobiler's Club for the wrongful death of her husband, Aaron Mercer.  Mercer and his friends were riding their snowmobiles along a trail operated and maintained by Defendant.  Mercer collided with a train as he attempted to cross railroad tracks that intersected with the trail.

In support of her claim, Plaintiff submitted an expert report from Stephan Neese.  Neese offered several opinions in his report, ranging from opinions about the signage used on the trail to lack of notice to the railroad about the trail.  After receiving Defendant's lighting expert's

deposition testimony, Neese provided an additional opinion stating that "Aaron Mercer would not have had adequate time to perceive and stop or avoid the oncoming train." (Def. 7th Motion in Limine, Ex. A.)  Plaintiff's counsel provided this opinion to Defendant the day before trial.

Defendant claims that expert Neese's report contains three opinions that are not adequately supported by his expertise or the foundation laid in each of the three opinions. (*See* Def. 1st Mot. in Limine at ¶¶ 10, 13.)  The three opinions at issue are:

> 1.4   The Club did not contact the Canadian Railroad to alert them that this crossing was being used by this recreational off-road trail thereby hampering or restricting the railroad from making adequate internal safety adjustments or uniform regulatory recommendations.
>
> 1.5   There was no attempt to determine what uniform warning signs would be adequate for these off-road vehicles entering the public highway and grade crossing.
>
> 1.6   A simple traffic study by someone familiar to public highway design and studies could have conducted a simple survey to determine proper signage along public roadways, would have provided guidance and proper recommendations to the Club for the warning signs needed to maintain uniformity with existing motorist's sign codes and would have alerted the railroad of the intended use of this crossing as part of the trail.

(*Id.*, Ex. A at 7-8.)  Specifically, Defendant argues that the above opinions "simply amount to an assertion that the Club's procedures for placing the signs on the snowmobile trial should have been determined by a traffic study . . . ." (Def. 1st Mot. in Limine at ¶ 4.)  It objects to this assertion because Neese (1) is not an expert on public highway design; (2) has little experience in train collision cases where signage on trails is an issue; and (3) admits that he did not conduct a traffic study in forming his opinions as to whether the signage was adequate. (*Id.* at ¶¶ 5, 6, 9.)

2

Plaintiff responds that Defendant's entire motion in limine revolves solely around opinion number 1.6 – the only opinion that involves traffic studies.  (Pl. Obj. at 1.)  Plaintiff further asserts that Neese's opinion is based on the Manual of Uniform Traffic Control Devices, §§ 1A-4 and 7A-6, which state: "The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location."  (*Id.*)

Defendant also objects to the additional opinion provided by Plaintiff's expert.  It first argues that it "is greatly prejudice[d] to have received an additional opinion the day before trial." (Def. 7th Mot. in Limine at ¶ 2.)  Defendant further contends that there is "no foundation to justify Mr. Neese's opinion [regarding human perception reaction time] in the form of calculations, scientific data or even such basic requirements as to his qualifications to render such opinion."  (*Id.*)  It finally asserts that there is no foundation for the assumption that Aaron Mercer was traveling between 30-40 miles per hour as he "perceived the train light."  (*Id.* at ¶ 6.)

## II.  DISCUSSION

The admissibility of expert testimony is governed by the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Similarly, the *Daubert* framework requires a district court to determine whether the expert's testimony is reliable and relevant.  In particular, the district court must determine whether (1) the

3

proposed witness would testify to valid scientific, technical or other specialized knowledge; and (2) his testimony will assist the trier of fact. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The "reliability" factor includes a determination of "whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is reliable." *Id.* (citation and internal quotations omitted). Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to the judge or jury may qualify as an expert witness. *See* Fed. R. Evid. 702; *United States v. Navarro*, 90 F.3d 1245, 1261 (7th Cir. 1996). But a district court must reject any subjective belief or speculation made by the expert. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). Furthermore, "[t]he focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." *Id.*

Rule 702 and *Daubert* require district courts to function as a "gatekeeper" with respect to the screening of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (citing *Daubert*, 509 U.S. at 589). This framework is a flexible one that must be adapted to the particular circumstances of the case and the type of testimony being proffered. *Mihailovich v. Laatsch*, 359 F.3d 892, 919 (7th Cir. 2004). A district court has wide discretion in determining the competency of a witness as an expert and the relevancy of his testimony with respect to a particular subject. *Roback v. V.I.P. Transp., Inc.*, 90 F.3d 1207, 1215 (7th Cir. 1996); *United States v. Stevenson*, 6 F.3d 1262, 1267 (7th Cir. 1993). As the Supreme Court elaborated, the objective "is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the

4

practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

In making the determination of whether the expert's testimony is reliable, the Supreme Court directed district courts to consider four non-exclusive factors: "(1) whether the scientific theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error when applied; and (4) whether the theory has been 'generally accepted' in the scientific community." *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 534 (7th Cir. 2005) (citing *Daubert*, 509 U.S. at 593-94), *vacated on other grounds*, 448 F.3d 936 (7th Cir. 2006).  Because not all expert testimony can be neatly examined under the factors set forth in *Daubert*, the factors are "neither definitive nor exhaustive, but rather flexible to account for the various types of potentially appropriate expert testimony."  *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003) (citing *Kumho*, 526 U.S. at 153).  Thus, the *Daubert* factors may not apply in every instance.

The 2000 Advisory Committee's Notes also noted that "not all of the specific *Daubert* factors can apply to every type of expert testimony."  Fed. R. Evid. 702, advisory committee note (2000 amends.).  It set forth standards that can be useful in determining whether the expert testimony is reliable.  These factors include: (1) whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying; (2) whether the experts have unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the experts have adequately accounted for obvious alternative explanations; (4) whether the experts are being careful as they would be in their regular professional work outside their paid litigation consulting; and (5) whether the field of

expertise claimed by the experts is known to reach reliable results for the type of opinion the experts would give. *Id.*

### A. Stephan Neese's Qualifications

During the *Daubert* hearing, Defendant argued that Neese was not qualified to render opinions regarding signage on snowmobile trails. Neese has been a certified accident reconstruction specialist since 1997. He successfully completed crash investigation and reconstruction courses at the Traffic Institute at Northwestern University and has attended many seminars and classes regarding related topics. He also teaches classes relating to accident reconstruction. Before he became an accident reconstruction specialist, Neese was a Schererville police officer for twenty years. Neese stated that, as a private consultant regarding accident reconstruction, he has worked on about 175-180 civil cases and about fifteen criminal cases. In total, as both a police officer and as a consultant, Neese has been involved in over 3,500 accident cases. He estimated that, at a minimum, he has had 7-8 cases relating to signage.

He also discussed his familiarity with the Indiana Manual on Uniform Traffic Control Devices (Manual), which is an attempt to have uniformity of warning signs and signals in similar traffic situations. According to Neese, the first section of the book states that traffic control devices can serve as a guide for private roadways or trails when traffic devices are needed. Defendant conceded that Neese would be competent to testify as an expert on signs for vehicles on public roadways.

The Court found that Neese, with his extensive education, experience, including with cases involving signage, and knowledge regarding the Manual, was qualified to serve as an accident reconstruction expert, particularly as the Manual states that signs on public roadways

also can be used on other types of roads and trails.  Thus, Neese's expertise regarding accident reconstruction for vehicle crashes on public roads was transferable to crashes on private trails relating to signs.

### B. Expert Report Opinions 1.4-1.6

As an initial matter, Plaintiff withdrew Opinion 1.6 from Neese's expert report. Therefore, without further discussion, Opinion 1.6 was stricken.

The Court also excluded Neese's Opinion 1.4 because it was not the subject of a proper expert opinion.  Neese has not provided any basis for his opinion that the Snowmobiler's Club should have warned the railroad that the crossing was used by snowmobilers.  Furthermore, this opinion is not based on any scientific, technical or specialized knowledge.  In fact, according to the report, it's not based on anything.  Neese did not cite to any treatise or manual for his opinion that the railroad should have been warned.  A conclusion without an analysis providing an accepted premise or reliable principles is simply not an appropriate expert opinion.

On the other hand, Opinion 1.5 demonstrates how Neese applied the facts to a reliable principle and then arrived at a reasonable conclusion.  First, Neese reviewed the facts (taken from deposition testimony) that the trail required snowmobilers to cross the railroad crossing and that there was no railroad warning signs where the trail met the road.  He then analyzed the Indiana Snowmobile Trails Program Manual that stated that, when installing signs, the trails operator should be familiar with uniform guidelines.  Finally, he applied this principle to the facts of the case and opined that the Snowmobiler's Club had not attempted to determine what uniform warning signs would be adequate for snowmobilers entering the public highway and crossing the railroad tracks.  Accordingly, this expert opinion fulfilled the reliable and relevant

factors, and thus was admitted.

Defendant did not object to Opinions 1.1 -1.3 in its First Motion in Limine, and therefore any objection was waived. At any rate, these opinions also fulfilled the requirements of Federal Rule of Evidence 702. Neese, who is qualified to testify on signage, used proper facts (photographs, maps, deposition testimonies) and reliable principles (from the Indiana Snowmobile Trails Manual and the Manual on Uniform Traffic Control Devices) to reach his conclusions that the signage did not warn snowmobilers of the railroad tracks and that the placement of the signs did not follow certain guidelines.

Opinions 1.1-1.3 and 1.5 require specialized knowledge regarding signage that Neese possesses and are based on objective information coming from manuals. Furthermore, these opinions would be helpful to a jury and are therefore relevant. Accordingly, Plaintiff's expert report opinions 1.1-1.3 and 1.5 were admitted.

### C. Supplemental Expert Opinion

Neese's supplemental expert opinion used facts provided by Defendant's lighting expert's testimony to conclude that "Aaron Mercer would not have had adequate time to perceive and stop or avoid the oncoming train." (Def. 7th Mot. in Limine, Ex. A.) He further stated:

> A normal perception reaction time could be as low as 1.5 seconds and an unsuspecting perception/reaction time would be considerably higher. Aaron Mercer would have had about 25-40 feet to perceive and react. Traveling between 30-40 mph, the time he would have had to perceive the train light and react would be less than one second.

(*Id.*)

At the *Daubert* hearing, Neese stated that it is generally accepted in the literature that the

sensory reaction time is 1.5 seconds based on the numbers provided by Defendant's lighting expert. The problem with this opinion is that Neese did not provide any reliable principles or methodology for this conclusion. Simply, we do not have any idea if he is right. He did not refer to a treatise, an encyclopedia, or an article that provides a premise for his opinion that human perception time would be 1.5 seconds in this case. Without such information, the Court could not know whether this opinion was reliable.

Furthermore, Plaintiff provided the additional opinion to Defendant the day before trial. The Court acknowledges that it was only on November 17, about two weeks before trial, that Defendant provided the lighting expert to Plaintiff for his deposition. Nevertheless, Neese admitted that he could have provided perception reaction time based on certain assumptions. If Plaintiff was considering a theory of perception reaction time to bolster her case, Neese could have provided reaction times based on various assumptions, and once provided with the lighting expert's testimony, finalized his opinion. But handing over a letter with a supplemental opinion that provides no basis for the conclusion a day before trial is unduly prejudicial to Defendant.

### III.  CONCLUSION

Based on the above reasons, Defendant's First Motion in Limine [DE 67] is **DENIED IN PART** and **GRANTED IN PART**, and Defendant's Seventh Motion in Limine [DE 89] is **GRANTED**.

**SO ORDERED.**

ENTERED: December 22, 2006

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
